Good morning, J.R. Murphy. The district court came to an erroneous conclusion in this case based upon its improper construction of the policy language at issue, and therefore, the judgment in favor of the defendants, the insureds, and the claimant should be reversed. And glaringly absent from the district court's order is the very important word, only. Only with respect. And in fact, that language has been ruled upon in other cases and given a plain, ordinary meaning is an unambiguous term, which the court in our case did find it was unambiguous. But as argued by defendants, they say that that put the burden on Penn National to show that the conduct of Mr. Lewis in operating the boat at the time of his wife's injuries was wholly unrelated. And the district court used in any activity. And there is a huge gap between any and only. And the cases we refer to in brief talk about only being solely or exclusively, directly, having a causal connection, not just a temporal connection. And so the conduct at the time that Mrs. Lewis was injured by her husband's operation of their family motorboat was at the time he was trying to land the boat so that his two daughters and their teenage friend could play on a rope swing over the river. And that conduct was not only with respect to the conduct of his business. And Judge Duffy made that finding both factually and legally. They couldn't be out there for recreation purposes at all. I think they've converged. Yes, a business can do recreation and entertainment with clients. To the extent that that was argued, that was our point. That's not the point. Yeah, but the children weren't clients. The children were not. And so at the time, first of all, we believe the case law submits that if it's a mixed use at the time, which this wasn't, the joint appendix, Mr. Lewis' testimony on 107, his daughters on 161 and 162, it was only with respect to the girls' recreational aspirations to swing on the rope swing at the time of the injury. But one of the cases that is cited is the case where the fellow's gun discharged and he was allegedly doing both activities. He'd gone to retrieve a mirror. He worked for a lawn repair, lawn motor repair. I believe that was the Ferguson case, Selective v. Ferguson, Pennsylvania District Court ruling. And the gun discharged. So even a mixed purpose at the time was held in that case not to be only with respect. And so the court here using in any activity and then anchoring it to workers' compensation case law standards, which this court and Judge King joined in the Admiral v. Ace case, have said that's the wrong standard when interpreting the policy provisions of a general liability policy. Workers' comp has a different public policy behind it. And in those cases, anything that's merely incidental can be held to be a covered claim for that employee. That's converse to the policy language at issue here that was addressed in several of the cases we've cited and really noted by this court in the Scottsdale v. Marks case as being only with respect to so that there has to be solely or exclusively a business purpose. So even a mixed purpose at the time of the accident certainly would not be sufficient to satisfy this policy language. Now, Penn did argue that there was no evidence whatsoever that there was any business purpose with regard to the whole alley. And we've argued that in brief. And we think that that is clearly erroneous. And it is a ruling that this court could make. But the court doesn't have to go that far in order to reverse the judgment because in its core, the judgment is based on improper policy language. The word only never appears in the order of the district court. The phrase in any activities and during the trip, which is much broader than what the policy and the case law interpreting it said. And he uses a term of construction from the workers' comp case law, which this course has said courts cannot refer to. And several of the cases we cite make that distinction. There was a similar case in the Arizona Court of Appeals that we did cite also where a man with a weekend fishing expedition with lots of potential customers, prior customers, maybe future customers. They fished, they recreated. But at the time, he was ferrying his father, who was not a customer, just like the daughters here. So his father could participate solely recreationally. His father was not helping him with the business, just like the girls in this case. In reading the policy language, and I'm just having trouble articulating this, bear with me. The only, I mean it seems as though you're reading it to say basically your members are also insured, but only with respect to activities that are only business related. Doesn't the only just mean that they're insured only with respect to business activities and now we have to decide what counts as a business activity? Whether it's no longer the conduct of your business because there was also a recreational part. Do you see what I'm saying? It's sort of like what exactly is the only modifier? I understand that, but I think it talks about the activity and there must be some causal connection. There's a couple cases, auto owners versus Holland and auto owners versus England. I didn't realize auto owners was invading Europe. But there were two separate cases recently, one from the Eastern District of Tennessee, which is the England case. And it talked about a causal nexus between the cause of the injury and the insured's operations or business. Sure, that's a different question. That goes to sort of how do we define the conduct of your business. But I'm not sure the only gets you as far as you would like it to get you. I don't read the only as saying that the activity in question has to be only business related. Well, the District Court of Ohio in the Plank-Greer case that we cited said the term only modifies the phrase with respect to the conduct of the business. Thereby expressly limiting the insured's coverage to conduct that relates solely to the insured's business. The Arizona case had the word direct conduct of the business. Direct and only, in my view, accomplish the same thing. Yeah, but there's a District Court case out of Indiana that goes the other way. I mean, I think that what we have to do is to look at the contract language and make a call. I'm not sure how helpful those other houses are. Well, there are two things in Indiana why this court should reject those cases and others. First of all, it found the language ambiguous. And the other courts and the court below here found the language unambiguous. That's a big difference because how you interpret ambiguous language versus unambiguous is very different. Plain, ordinary meaning. Secondly, the Indiana court referred to the workers' compensation case law to give it a broad interpretation. So they found the language ambiguous. Here we have the court expanding the language all by itself, not what was written, but to what the court said was written, which it wasn't. And then anchoring it to this workers' compensation, which a number of courts have said that is not. And the reason is because workers' comp is a state-created, no-fault system, and it mandates that courts liberally construe the statutes in favor of coverage. And that same rule of construction doesn't apply to the insurance provision, especially here where it's an insuring clause to which the defendants board the burden of proof. So we believe that only is a key word. And again, the Indiana case is not. And it was a legal error. Now, we think this court could go further, though it need not. But it may want to because the district court failed to acknowledge any contradictory evidence, excluded some relevant evidence, which we raised as one point, but would not be a grounds for reversal by itself. But in light of everything else. State farm evidence. Yes. Which on relevance, this court noted it was relevant, at least to a determination, whether any watercraft coverage applied in the first instance. Now, I made the decision earlier that their denial was valid, so we did not raise the existence of that policy because it was exclusionary language and the fact that it likely did not apply even though it was in existence. But it didn't apply because of the family member exclusion. That would not exclude coverage under the Penn national policy in light of the endorsement that the court asked us to bring. But that evidence being excluded on such flimsy ground was clearly relevant. That's the lowest standard of almost any evidentiary standard. And it was excluded. The language submitted to the advisory jury was greatly watered down. During the trip as a whole, which is much broader than how the courts have interpreted the policy language at issue. This court may well have a firm and definite conviction that a mistake was made. And the danger posed by the ruling that rests solely upon the subjective and secret intentions of a significantly financially invested insurer. These intentions never being manifested by a single outward act. Never being corroborated by a single shred of evidence either from the other witnesses who testified about various and sundry things as did they gas up on the way to the river that day. I thought the neighbor corroborated him on the fact that he was wooing him to do business with him. No. He said he actually went in and did business with him. No, he said several years later when Mr. Lewis was selling the tankless hot water heaters that he actually got a flyer several years after the fact and decided to look into that and actually get one. But I think there was no formal business activity of any kind at that time. He didn't even know he was a potential customer. I know you say that, but if I were taking somebody out on trying to scare up some business, I wouldn't tell them on my boat. I wouldn't say, you're a potential customer. I just want you to know that. I wouldn't want to socialize with you. No, I understand that. I understand that, and it's not like people don't do that, and that's the proper way to do it. But when you look at the delay in reporting this, when you look at the fact that this man meticulously deducted the most minute expenses and he deducted no expenses for this trip whatsoever, that he said that he, by his own admission, said there's really two criteria. I thought there was an argument about that too. I know you have somebody that says he gassed up and didn't charge it, and he says he gassed up before and did charge it. Again, the district court doesn't even give reference to the contradictory evidence, which completely dispelled his credibility on many issues, such to the point that the substantial evidence was in favor. It's not just a he said, she said. The district court, this was tried to the district court, but there was an advisory jury. Yes. Does that happen a lot? Not very often, although Judge Duffy thought he'd never done it before, but he actually did it before in one of my cases. Did you all agree on all that beforehand? What sides agreed to do it this way? We agreed. We did submit different questions, and it was said that we agreed to that. We didn't object because we said, here's ours, and he says, well, I'm going to use theirs. We didn't object, but we clearly didn't agree. But the advisory jury came out the same way.  And secondly, if you look. Since they're on the advisory, what difference does it make? You're right. It doesn't make a difference. It's just a point of fact, and if you look at the question that was submitted to them, it was so broad, 1% of the, they might have thought, well, there was 1%. And I'm saying the case law says it can't be 1%. It has to be only with respect to the conduct of the business at the time of the incident. And so you're saying the advisory jury was erroneously instructed on that point? They weren't erroneously instructed. They answered a question that did not answer any question. Because it could have been that they could have said maybe 1%. They gave bad advice. Yes. And it wasn't relied upon, nor can the court. To answer factual issues, perhaps, yes. But the construction and interpretation of the policy is a matter of law for the court in South Carolina. And in many places. And this court has noted that. And so it's that interpretation that is factual. Because just because there might have been some activity, which there was some testimony, although we think it goes against the clear weight and substantial evidence to the contrary. Some evidence that perhaps entertainment had been going on at some portion during the trip. What is undisputed is that at the time that Mrs. Lewis was injured, that activity was for the girls to swing on the rope. And that was not only with respect to the conduct of the business. And the cases that we have cited talk about the mixed use, talk about there may be some business purpose. That was going to make the neighbors or the potential customers feel good. They were going to watch the girls swing around on the ropes. Everybody's having a good time. Everybody's comfortable with everybody. They're going to think about Mr. Lewis next time they need some air. That's what the insurers thought in Plank Greer when they shot up the refrigerator and somebody got hit by a piece of shrapnel. And in that case, the person who got hit by the shrapnel had at least gotten a quote for some business at the party for a one-year-old. It was like a one-year-old birthday. So I think that in light of that, this holding should be reversed because the interpretation was just incorrect. Thank you very much. Good morning. I'm Skip Udsey, and I represent Joe Lewis. When you talk about someone going out on their boat, particularly in the context that we're talking about, in the low country of South Carolina, you've got three categories of scenarios, I suppose. One is it's an all-pleasure trip. On the other end of the spectrum, it could be an all-business trip. But in between, you have what I think is best characterized as a dual-purpose trip or mixed-use trip, I think was the term that Mr. Murphy used. Mr. Murphy started his argument by saying what was glaringly absent from the district judge's order was the word only. But I would like for this court to also take notice of the fact that what's glaringly absent from any discussion by Penn National prior to today, or rather prior to its brief, is that word only. If you look back at the complaint in this action, and I think it's page 14 and 15, in the complaint, Penn National doesn't say this can't be a joint or dual-purpose sort of activity in order there to be coverage. Instead, Penn National pleads affirmatively. There was no business-related activity going on. This was entirely a pleasure. You say that issue wasn't preserved? That's correct. That was never litigated below. In fact, if you go so far as to the proposed questions to the jury that Judge Duffy asked for, Penn National submitted proposed questions to the jury, and it did not use the term only in those questions. Even more importantly, when Judge Duffy said, I'm thinking about using the proposed questions from the defendants, Penn National did not object to the use of those questions, and they did not integrate the term only. Of course, only is in the policy. It is in the policy, Your Honor, but I agree with Judge Harris's interpretation that when you look at the term only, if the insurance company intended this phrase to mean what Mr. Murphy is suggesting it should mean, it should say, while acting in the conduct of the insurance business only, or to the exclusion of any sort of personal activity. And in fact, one of the cases Mr. Murphy relied on, he called it the Arizona case. I think he's referring to the Uniguard versus Martin case. In that case, he had a different type of exclusion. It said all personal acts are excluded as well as all acts that are not in the direct conduct of the business. It goes back to the Coke case that we cited in our brief out of Indiana, where the court says, look, if an insurance company wants a policy to mean that a dual-purpose trip or dual-purpose activity is not covered under this clause, then it can write it that way. It writes the contract. We're going to construe the contract against the author of the contract, which should be done under South Carolina law as well. And if it wants that phrase to mean what it's now arguing it should say, but what it says doesn't mean that. And there's a case I just discovered yesterday. I haven't filed Rule 28 because of the travel coming up here, and I just discovered the case. But earlier this year in 2016, there was a case decided in the northern district of Alabama, to which I'd like to call the court's attention, State Farm versus Denmark. Have you told the other side about this case? I've just discovered. I have not. Well, you discovered it before argument. I did, and I have not called it. It's really better formed, at least let them know. If you prefer, then I will submit it under Rule 28. No, we can talk about it. Well, what's important in this case is it addressed the same language we have here, and it addressed a situation where a woman owned a beauty salon, and she was insured under a policy that had the same only with respect to language that we're dealing with in this case. And in that case, she traveled to another town in rural Alabama to visit with her sisters for a birthday party lunch. And afterwards, she planned to stop and pick up supplies for her beauty salon. But she was involved in a car wreck on the way to the party. And the court said, well, this is clearly a dual-purpose type of trip. And the insurance company, State Farm in that case, insisted on the same policy interpretations in national here. But what the court said is, look, you don't define conduct of the business, and you use this term only with respect to the conduct of the business. Clearly, to the extent you're dealing with one end of the spectrum, all pleasure, then this applies. When you're dealing with the other end of the spectrum that we define, all business, we understand how to apply this. But it becomes ambiguous when you're looking at a dual-purpose situation. But the district court found this wasn't ambiguous here. The district court found it was unambiguous, but you could find that it is ambiguous. But the point is, insofar as applied to the context of this case, when you're looking at what somebody's doing at the point in time, you need to look at whether there is a business purpose under the language of this policy. And Mr. Murphy argues, I guess as a practical type argument, 1% would get us there. 1% would be enough to invoke coverage when there's some business-related purpose. But I would argue that the same policy considerations could be urged against the draft of this policy, the insurance policy. 1% would allow Penn National to do exactly what it's done in this case in every single case that comes up that might be covered here. What about the reliance that the district court had on workers' comp cases? I don't think that the district court's opinion, while he did cite some workers' compensation cases, I don't think that his case, or rather his decision, rests entirely on those. And I have read the Averell cases, both the district court and the Court of Appeals, and I'm not sure I fully understand why that needs to be rejected in toto. And I'm sure you can explain it to me. But my point would be this. Well, if it's Fourth Circuit law, it doesn't really matter whether you agree with it or not, right? Right. Or we agree with it. I'm not sure that I fully understood why they would not be considered at all. And that's my fallacy for not being able to understand, or my failure for failing to understand why that's the case, because particularly it's here where Penn National is arguing for a commonly understood interpretation of the terms in the policy. That is their argument. We need to look at these policy terms and their commonly understood meaning. And one of the most common places that this issue arises, whether something is with respect to the conduct of a business, is in the context of workers' compensation. So I guess the point is this, though. Even if you remove those citations to the workers' compensation cases from the district court's opinion, it still doesn't change the outcome. Now, because his opinion is not only supported by those cases, but as I alluded to a moment ago, the Koch case, this court's case in Marx versus Scottsdale, which dealt with the only with respect to language, and while it didn't decide the topic, in footnote three it left open the prospect that something which has a clear dual purpose, including a pleasure purpose, is something that would be covered. Going back to this 1% argument, if Penn National has its way with this interpretation, then some activity that could be entirely business-related from start to finish could be altered into a non-covered activity under that interpretation. If Mr. Lewis, for example, who likes to chew chewing gum, was chewing chewing gum at the time that the incident occurred or the occurrence happened, because he's now engaged in some non-business-related pleasure occurrence. Now, here that's not the case. I mean, it's not that extreme. Here, you not only have the boat traveling to a sandbar where the girls intended to swim, but you have Mr. Lewis engaged in his activities and fulfilling his responsibilities, and it is undisputed, one of his responsibilities, Penn National even agrees, one of his responsibilities is to entertain prospective clients.  He's at the helm of the boat. He is. He is the whole corporation, right? He is. It's an LLC, but he is. You can say it. Well, that is one undisputed fact, Judge Motz, and I don't think even Penn National acknowledged it in their arguments at trial. One of his responsibilities is to entertain prospective clients. I mean, he is the marketing guy. He wears all the hats. And he's doing that at the time. He is not only en route to a destination where these girls hope to play, but he is transporting two prospective clients at that time on a pleasure trip. He's taking them along to have a good time on the river, on his boat, and that's exactly what he's doing at the moment of this injury. Now, that's another argument that you don't see anywhere in the transcript below or the trial below is Penn National saying we have to engage in this precise moment of injury analysis. That doesn't come up until you see Penn National's brief here in this court. And in support of that, they cite a 2006 unpublished opinion from this court, which I don't think is binding authority under Rule 32. But that seems to be the genesis of that. But again, that's not an issue that was preserved. That was not the case we tried below. Because if we had tried below what Penn National is arguing now, and if Penn National was right, we'd have lost. Because if you look back as far as our summary judgment motion, our summary judgment motion says this is a mixed business pleasure trip. All throughout this trial, it has been our position, we're not running away from the fact that there was a pleasure element to this trip. There's no way you can go on a boat. No way you can go on a boat and not have a good time. And Penn National, who put in a specific provision in this policy to provide coverage for watercraft accidents under certain limited circumstances, had to know that that would include instances where people would be enjoying themselves. Again, there's no way that you would ever be covered under this provision in a watercraft unless everybody said, I was totally miserable the whole time I was out there, I wasn't having fun, we were just talking business, and I didn't even like the wind blowing through my hair. But not to be overly facetious about it, the point is, that fact alone distinguishes this case from many of the cases that Penn National relies on. For example, the Ferguson. Sorry, can I just ask you a question? Because I see they're about to run out of time. What's going on with Excel? If you can explain this to me, Excel is clearly covered as insured, right? So what's going on with Excel? Excel is covered. That's not an issue. There is an underlying tort action against both Mr. Lewis and Excel, and Excel is covered for any liability arising out of a tort action. There is a related but similar question to be decided in that case as to whether Mr. Lewis was acting in the course and scope of his employment as Excel's agent at the time of the elision with the bank. And the district court doesn't sort of break that out as a separate issue. Is that because he thinks it follows from the fact that Mr. Lewis was a covered insured because this was a partly business activity, that it follows that he was also within the scope of his employment, so Excel? I don't know how to answer that because I'm not sure what his thinking is there. I know that to the extent Mr. Lewis is a defendant in the tort action, and coverage for any liability that he may have in the tort action is going to be governed by the outcome of this action. Judge Duffy stayed in the tort action pending resolution of this action. It was our position initially, and I think you can see this from the underlying record in the district court, but we wanted to proceed the trial with that action first and then ultimately were persuaded to agree to stay that action until this was tried because we felt like we could certainly prove course and scope there, which would then bind Excel, and there's no question about coverage for Excel. And I believe that issue remains regardless because there's some discussion, even in Penn National's brief, that the question of course and scope can be different than with respect to the conduct of the business. There are limited circumstances where that may be true. But so all that has to be decided now is whether Lewis is a covered insured? That's what this action is about because I don't think there's ever been any argument that Excel, named insured under policy, is covered for this occurrence. And it's an occurrence that clearly is covered under the exception to the watercraft exclusion. And again, that distinguishes us from the cases that the other side has cited. Unigard v. Martin doesn't have a specific provision that extended coverage there to a watercraft. The Plank Green case, that's the refrigerator filled with plastic explosives that was blown up at the baby shower, and there was some question about business relationship. That case didn't have a specific provision that said we will extend coverage to exploding refrigerators under certain circumstances. The Ferguson case that Mr. Murphy cited, that's the pistol by the stump grinder. It didn't have anything dealing with firearms extending coverage specifically. But I would add in that if you look at that Ferguson case, in the opinion that he cited in his brief, the court said there were sufficient facts there to create an issue of fact about coverage and therefore the insurance company had a duty to defend. And then a year later, the court decided summary judgment motions in that same case and denied both parties motions for summary judgment saying the duty to indemnify was a jury question given the disputed facts about the mixed business and pleasure aspects of the case. So I think when you actually examine all the cases that have dealt with this, both those that they argue in favor and those that argue in our favor, those that Penn National has cited are clearly distinguishable because they lack, one, the watercraft coverage that's specifically included in this policy. Two, some of them are distinguishable based on the policy language. Three, you've got the Fourth Circuit case with the precise moment that really is an improper, it's not a proper authority under Rule 32 because of the age of the unpublished opinion. And then ultimately in none of those cases was there really an argument about a mixed business pleasure component or a dual purpose type thing. Nobody really could say that blowing up the refrigerator was business related, for example. In fact, the court said there was no real argument that it was. Thank you. Thank you. May it please the court. My name is Jenny Horne and I represent XL Mechanical LLC and Roger Lewis in this declaratory judgment action. I got involved in this case just when the D.J. action was filed. And XL Mechanical is a single member LLC and Roger Lewis is its only member. And so with regard to the issues that Judge Duffy decided, that really wasn't one of the issues that was really before the court at the lower level on the D.J. action. With the watercraft exclusion, I think it's important just to point out that the boat was owned by Mr. Lewis and not XL Mechanical. So there was this kind of understanding that Roger Lewis and XL Mechanical are one and the same. So to the extent that there's factual clarification as to the relationship, I just felt the need to supplement that information for the view of the court. And Judge Mott, you're exactly right. Small business owners, particularly people like this gentleman who is in the heating and air conditioning business, is exactly right. When you go out on a dinner, you can use dinners just as easily as you can a boating outing. You go to dinner, you talk about some business, and then the rest of the time you talk about your children and you talk about your interest in other things, you know, those kinds of things. So I think that if you're talking about a mixed-use boating outing, it could also translate into dinners, which of course is a pretty typical type of business activity that you deduct as a business owner as part of your marketing plan for your particular business. So to the extent that just to clarify, I think what Judge Mott said was actually a good salient point and wanted to use the analogy of a dinner as it's not any different than if you're going on a boating, an outing with a potential customer, potential client. Thank you very much. Mr. Murphy, do you have a rebuttal? This is not the first time that the phrase and the policy language has been mentioned. If we look back to the first document filed in connection with this case, plaintiff's complaint, paragraph 23, members are also insurers but only with respect to the conduct of the insured's business. Additionally, the managers of the limited liability company are also insurers but only with respect to their duties as managers. I guess what he's saying though is that the actual declaration you asked for. I'll proceed, paragraph 24. On September 4, 2011, at the time of the collision, which is what they said we've never argued before, at the time of the collision that resulted in injuries to Joe Lewis, Roger Lewis was operating the boat for personal pleasure and was not operating the boat with respect to the conduct of Excel's business or with respect to his duties. I didn't put the word only in that paragraph, but that's the allegation. That's been the argument from the beginning. If it wasn't articulately made, that's a shame on me as a poor lawyer, but that doesn't mean the issue's been waived or not preserved. You're saying it was sufficiently preserved? Yes, sir. It was in front. We did not make closing arguments. We did not brief. We submitted proposed findings of fact and conclusions of law after the trial. We did not have a hearing like this. Are they in the joint appendix? They should be, yes. They should be. I'm not sure if both sides were. I think just his. But we did not brief it after the trial, and we did not argue. We argued to the jury, and so we didn't argue again to the judge. You argued to the jury, and then they brought in a verdict. Yes. And then you submitted the proposal. If we even did, I don't think we actually did. I think the judge said if we didn't submit anything further after that, the judge issued his ruling. So we didn't submit our proposals. So we didn't make a motion for summary judgment to lay out this, and if we had and not done it as well, I don't think that that would preclude it. That's all we're being said. We didn't articulate it as well, but it's right there in the complaint, and we certainly have preserved it, even if we didn't articulate it quite as well earlier, and that wouldn't be the first time that by the time I get to Richmond, I think a little more clearly about my case sometimes. Secondly, I don't know the Alabama case, but I did hear ambiguous thrown out again, and, of course, in this Scottsdale v. Marks case with Judge Harris writing, she found this language only with respect to not to be ambiguous at all and that it would not apply this policy provision, limited coverage, and did not apply to every situation where an insured or a putative insured might be doing something in connection with the business of the name insured. So I don't think, again, the workers' compensation anchoring to this broader language is appropriate in this case under this language, and I think this Court has noted that before. You all brought this suit seeking the declaration that you didn't have to defend or indemnify. We tried to intervene in the underlying suit in the Admiralty case because Mr. Lewis readily admitted liability and vicarious liability, and the last question about what does the reversal do, we did ask for a declaration in paragraph 20 of the complaint that Excel was not vicariously liable for the claims against Roger Lewis. If Roger Lewis is not acting with respect to the conduct of the business and he's the only person who could, then the business could not be liable either, and this Court in its reversal and finding that he was not acting in connection with the conduct of the business at the time of the injuries would by necessity find that therefore Excel could not be vicariously liable for the injuries because they occurred as a result of the purely personal aspect of the trip. And so we obviously, with the finding of the District Court, that finding that he was acting in the conduct of the business, that negates an argument about vicarious liability. So the District Court did find that Excel... Yeah, but if not expressly... I think pretty expressly. Yeah, he had to. If you find that the sole member of an LLC who's a member and manager is acting within the conduct of the business, that's what vicarious liability is based on. Right, he did say that... Yes. He has to defend Lewis and Excel. And conversely, because we believe he used an improper legal standard in light of the facts at the time of the collision, we believe the reversal would reverse that finding as well too, and that that is a legal issue that would be dependent upon the first issue. But the only rule that you had to defend... Well, there has not been indemnity yet because the Admiralty case has not been tried. But in effect, he's saying there is coverage for this accident under the policy, and if we lose on appeal, Penn National loses on appeal, there will be a trial. There might be some issues of comparative fault in the Admiralty situation, but they'll have a trial to award a judgment, and then Penn National will be liable for it. But we submit this court can and should reverse, and it would implicitly overrule the finding that Excel is liable as well. Thank you. Thank you very much. We will come down and greet the lawyers and then go to our last case.
judges: Diana Gribbon Motz, Robert B. King, Pamela A. Harris